UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.;
WARREN NOLAN JR.; and DARNELL ROANE,         20 Civ. 170

                Plaintiffs,                    **COMPLAINT AND**
                                                **DEMAND FOR JURY TRIAL**
     v.

34-08 30TH STREET LLC; SVETOZAR
TATKOVIC; KLARA TATKOVIC; and
VALENTINO PELLUMBI,

                Defendants.

-------------------------------------------------------------X

        Plaintiffs Fair Housing Justice Center, Inc., Warren Nolan Jr., and Darnell Roane, by and through their attorneys, Cuti Hecker Wang LLP, for their Complaint allege as follows:

## INTRODUCTION

        1.     This action seeks to remedy the blatant race discrimination in the renting of residential apartments at 34-08 30th Street in Astoria, Queens (the "Building"), where African Americans are lied to and told falsely that apartments are not available when they are. White applicants, by contrast, are welcomed and provided rental information for the same units that are hidden from prospective African American tenants.

        2.     In the summer of 2019, Plaintiff Fair Housing Justice Center, Inc. ("FHJC"), a non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City region, sent African American and white testers to the Building posing as prospective tenants. FHJC's investigation established that the Building's employees and agents treat prospective tenants very differently depending on the color of their skin. During recorded conversations, Defendant Valentino Pellumbi – the Building's

superintendent, who responds to inquiries about vacant apartments and, depending on the race of the prospective tenant, shares contact information for the broker responsible for showing units – repeatedly lied to the African Americans about the availability of apartments, telling them that no apartments would be available for months, even as he at the same time informed white testers about available units and encouraged them to pursue living in the Building.

3. Defendant Pellumbi went out of his way to assist white testers, including by calling the Building's real estate broker while a white tester was present at the Building on the white tester's behalf. But he never once provided assistance to African Americans, and instead pushed them to seek apartments elsewhere, rather than wait for a unit to become vacant. Defendant Pellumbi also told one African American tester that two-bedroom apartments in the Building were too expensive for him and his wife, despite never asking about the tester's income nor issuing any such warning to any white tester.

4. In New York City, segregated housing continues to separate where we live by race. Although Astoria has becoming increasingly diverse with respect to residents from other countries and continents, the African American population of the neighborhood remains less than 3%. On the census tract where the Building is located, the population is over 60% white.

5. Defendants plainly want to maintain that segregation, notwithstanding the laws that have been in existence for more than 150 years to eradicate such behavior, starting with the Civil Rights Act of 1866. Defendants' conduct must not be condoned, and must be redressed. Plaintiffs are entitled to declaratory and injunctive relief, compensatory damages, punitive damages, and an award of costs and attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 and pursuant to 42 U.S.C. § 3613.

7. Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b)(2).

## JURY DEMAND

8. Plaintiffs hereby demand a trial by jury.

## PARTIES

9. Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in New York City.  FHJC is dedicated to ensuring that all people have equal access to housing opportunities in the New York City region by eliminating housing discrimination and creating open and inclusive communities.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources away from other FHJC activities.  Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York City region.

10. Plaintiff Warren Nolan Jr. is an African American man who is a citizen of the United States and a resident of Kings County, New York.  At all relevant times, Plaintiff Nolan worked for FHJC as a tester.

11. Plaintiff Darnell Roane is an African American man who is a citizen of the United States and a resident of Kings County, New York.  At all relevant times, Plaintiff Roane worked for FHJC as a tester.

12. Upon information and belief, Defendant 34-08 30th Street LLC is a New York limited liability corporation that owns the Building.  Upon information and belief, Defendant 34-

08 30th Street LLC and its principals are responsible for establishing, supervising, and enforcing the policies and practices through which apartments at the Building are rented and through which tenants are selected.

13. Upon information and belief, Defendant Svetozar Tatkovic is a natural person residing in Queens County, New York. Upon information and belief, Svetozar Tatkovic is a principal of 34-08 30th Street LLC. Upon information and belief, Svetozar Tatkovic is responsible for establishing, supervising, and enforcing the policies and practices through which apartments at the Building are rented and through which tenants are selected.

14. Upon information and belief, Defendant Klara Tatkovic is a natural person residing in Queens County, New York. Upon information and belief, Klara Tatkovic is a principal of 34-08 30th Street LLC. Upon information and belief, Klara Tatkovic is responsible for establishing, supervising, and enforcing the policies and practices through which apartments at the Building are rented and through which tenants are selected.

15. Upon information and belief, Defendant Valentino Pellumbi is a natural person residing in Queens County, New York. Upon information and belief, Valentino Pellumbi is the superintendent of the Building. Upon information and belief, at all relevant times, Valentino Pellumbi was an employee and/or agent of 34-08 30th Street LLC with actual and/or apparent authority to screen applicants for suitability, to inform prospective tenants about vacant apartments at the Building, and to provide contact information for the broker responsible for showing apartments.

**FACTUAL ALLEGATIONS**

16. Having opened its doors in 2005, the Fair Housing Justice Center's mission is to eliminate housing discrimination, promote open, accessible, and inclusive communities, and strengthen enforcement of the fair housing laws.

17. FHJC dispatches individuals as "testers" – persons who pose as prospective renters or homebuyers for the purpose of obtaining information about the conduct of landlords, superintendents, real estate brokers, cooperative and condominium boards, lenders, sellers, and others to determine whether illegal housing discrimination is taking place.

18. At all relevant times, Plaintiffs Nolan and Roane, as well as the white testers who inquired about apartments for rent at the Building, worked for FHJC as testers.

19. Prior to participating in the testing investigation of the Building, Plaintiffs Nolan and Roane, as well as the white testers, received training from FHJC, which included instructions on conducting a test, preparing tester report forms, and using concealed digital audio recorders during tests.

20. As detailed below, the testing that FHJC and its testers performed demonstrates that Defendants regularly discriminate against African Americans with respect to renting apartments at the Building in violation of federal, state, and local fair housing laws.

**White Tester's Preliminary Visit to the Building**

21. On July 30, 2019, at approximately noon, a white male tester ("White Tester 1") posing as a prospective tenant went to the Building and asked an existing tenant where White Tester 1 could find the Building's superintendent.

22. Defendant Pellumbi, who identified himself to the tester as the superintendent of the Building, met White Tester 1 after the tester buzzed Defendant Pellumbi's apartment.

23. White Tester 1 asked Defendant Pellumbi whether any apartments in the Building would be available for rent before the end of August.

24. Defendant Pellumbi responded that a two-bedroom apartment (the "Apartment") was vacant and would soon be available for rent.

25. Defendant Pellumbi informed White Tester 1 that the tester would need to arrange with John Casella of Crest Haven Realty to view the Apartment. While the tester remained inside the Building, Defendant Pellumbi called Mr. Casella on the tester's behalf to help arrange a tour of the Apartment.

26. Defendant Pellumbi volunteered information to White Tester 1 about the Building – including praise for the tenants and the quality of the space – and encouraged him to consider living there.

27. Through his visit to the Building, and through two subsequent recorded phone calls with Mr. Casella that same afternoon, White Tester 1 scheduled a visit to the Apartment for noon on August 1, 2019.

**First African American's Visit to the Building by Plaintiff Nolan**

28. On July 31, 2019, at approximately 11:30 a.m., African-American Plaintiff Warren Nolan Jr. visited the Building and asked for and found Defendant Pellumbi.

29. Plaintiff Nolan asked Defendant Pellumbi whether the Building had any apartments available. Defendant Pellumbi responded, "No."

30. Plaintiff Nolan then asked whether any apartments would be coming available soon. Defendant Pellumbi responded: "To be honest with you, maybe in September."

31. Defendant Pellumbi did not offer Plaintiff Nolan any information regarding how to rent an apartment in the Building. In particular, he did not offer Plaintiff Nolan contact information for the real estate broker whose name and number he provided to White Tester 1.

**Second White Tester Confirms that an Apartment is Available at the Building**

32. On August 1, 2019, at approximately 11:00 a.m. – almost exactly 24 hours after Defendant Pellumbi told Plaintff Nolan that no apartments in the Building were available – a second white tester ("White Tester 2") visited the Building and spoke with Defendant Pellumbi.

33. White Tester 2 asked Defendant Pellumbi whether any apartments in the Building were available.

34. Defendant Pellumbi informed White Tester 2 that a two-bedroom apartment was available. Defendant Pellumbi further informed the white tester that in order to view or rent the Apartment, he would need to call John Casella of Crest Haven Realty.

35. Minutes after speaking with Defendant Pellumbi, White Tester 2 called Mr. Casella and arranged to see the Apartment that same afternoon.

36. At approximately 12:30 p.m. on August 1, 2019, White Tester 2 joined a tour of the Apartment that Mr. Casella had previously scheduled with White Tester 1. Both testers viewed the apartment and spoke with Mr. Casella about the unit and the process for renting it.

37. Mr. Casella confirmed for White Tester 1 and White Tester 2 that the Apartment was vacant and would soon be available to rent for $2,400 per month. Mr. Casella did not know exactly when the testers could move in because the owner planned to change the appliances and potentially perform other renovations.

38. Mr. Casella left no doubt that both white testers would be welcome to apply for and potentially rent the Apartment.

**Second African American's Visit to the Building by Plaintiff Roane**

39. At approximately 11:50 a.m. on August 2, 2019 – one day after the two white testers had toured the Apartment with the Building's real estate broker – African-American Plaintiff Darnell Roane went to the Building and met Defendant Pellumbi.

40. Plaintiff Roane asked Defendant Pellumbi whether the Building had any apartments available. Defendant Pellumbi responded: "to be honest, I don't have it right now."

41. Defendant Pellumbi further stated to Plaintiff Roane that an apartment might become available "after 2, 3 months maybe."

42. Defendant Pellumbi asked Plaintiff Roane how many people would be living in the apartment that Plaintiff Roane was seeking. Plaintiff Roane responded that the apartment would be for him and his wife.

43. Unprompted, and without any basis, Defendant Pellumbi indicated to Plaintiff Roane that a two-bedroom apartment would be too expensive for Plaintiff Roane and his wife, and that they should instead seek a one-bedroom apartment.

44. Plaintiff Roane asked how much a two-bedroom apartment would cost, and Defendant Pellumbi replied $2,500 – an amount that was $100 higher than the rental cost quoted to white testers by the broker.

45. Plaintiff Roane informed Defendant Pellumbi that the rental cost was within his budget. Defendant Pellumbi expressed surprise at this information.

46. Defendant Pellumbi told Plaintiff Roane that an apartment might become available in October, and Plaintiff Roane responded that he would follow up then about availability. Defendant Pellumbi opined that perhaps Plaintiff Roane "can find [an apartment] before" in some other building.

47. During the ensuing brief conversation between Defendant Pellumbi and Plaintiff Roane, Defendant Pellumbi commented to Plaintiff Roane that he did not look like he was from New York and also that he looked like a musician. Plaintiff Roane informed Defendant Pellumbi that both of those assumptions were false.

48. Defendant Pellumbi did not give Plaintiff Roane any information about the process for renting an apartment, and he did not provide the name or contact information for the Building's real estate broker.

**Another White Tester is Informed that the Apartment Remains Available**

49. On August 3, 2019 – a Saturday – a third white tester went to the Building to find Defendant Pellumbi, but could not locate or speak with him.

50. At approximately 1:00 p.m. on August 5, 2019, a fourth white tester ("White Tester 4") went to the Building and met Defendant Pellumbi.

51. White Tester 4 asked Defendant Pellumbi whether any apartments were available. Defendant Pellumbi responded unequivocally that a two-bedroom apartment was vacant, and that White Tester 4 could call the Building's broker for further information about renting the unit.

52. Defendant Pellumbi offered these responses despite having informed Plaintiff Roane three days earlier that no apartments were available, and that none would become available until October.

53. Defendant Pellumbi provided White Tester 4 with John Casella's name and phone number. He also told White Tester 4 that he would be at the Building for approximately fifteen more minutes, and that if White Tester 4 spoke with Mr. Casella and obtained permission to view the Apartment, Defendant Pellumbi would personally take White Tester 4 inside to see the unit.

54. After speaking with Defendant Pellumbi, White Tester 4 called Mr. Casella. Mr. Casella confirmed for White Tester 4 that a two-bedroom apartment in the Building was vacant, but informed White Tester 4 that the unit was being renovated and could not be shown at the moment. Mr. Casella stated that the monthly rent for the Apartment was $2,400.

55. Mr. Casella further informed White Tester 4 that the ownership of the Building had recently changed, which had caused delay in turning over the Apartment.

56. On August 14, 2019, White Tester 4 returned to the Building and met again with Defendant Pellumbi. Defendant Pellumbi confirmed that the Apartment was still available, and that work was still being done to get it ready for a new tenant.

57. Defendant Pellumbi again encouraged White Tester 4 to contact Mr. Casella about renting the Apartment. He also asked White Tester 4 about whether the tester and her husband had children, and where the tester was from.

**A White Tester Learns the Apartment Has Been Rented and is No Longer Available**

58. On September 10, 2019, a final white tester ("White Tester 5") called Mr. Casella and the Building's property management company to inquire about the Apartment. During these calls, White Tester 5 posed as the husband of White Tester 4.

59. White Tester 5 was informed during each call that the Apartment had been recently rented by someone else, and was no longer available.

* * *

60. Defendants lied to African Americans about the availability of apartments in the Building, while actively encouraging and providing information to white applicants.

61. The behavior evidenced by the testing detailed above is reprehensible. It subjected the Plaintiffs to debasement and humiliation, conveying to them clearly that they are,

in the eyes of the Building's owners, management, and agents, lesser citizens than their white counterparts. It interfered with FHJC's core mission and required FHJC to divert significant and scarce resources from other vital projects. It furthers racial segregation in housing in Astoria, Queens and throughout New York City. It must end.

**FIRST CAUSE OF ACTION**
(Federal Fair Housing Act – 42 U.S.C. § 3601 *et seq.*)

62. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

63. Defendants' conduct as set forth above constitutes a refusal to rent, or the refusal to negotiate the rental of, or a denial of housing on the basis of race or color in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).

64. Defendants' conduct as set forth above constitutes discrimination in the terms, conditions, or privileges of the rental of a dwelling, and/or in the provision of services or facilities in connection therewith, because of race or color in violation of the Fair Housing Act, 42 U.S.C. § 3604(b).

65. Defendants' conduct as set forth above constitutes the making of statements with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on race and color or an intention to make any such preference, limitation, or discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604(c).

66. Defendants' conduct as set forth above constitutes a representation, because of race or color, that a dwelling is not available for rental when such dwelling is in fact so available in violation of the Fair Housing Act, 42 U.S.C. § 3604(d).

67. Plaintiffs are aggrieved persons as defined in 42 U.S.C. §§ 3602(d) and (i), have been injured by Defendants' discriminatory conduct, and have suffered damages as a result.

11

68. Defendants' unlawful conduct was intentional, willful, and made in disregard for the rights of others.

69. Accordingly, pursuant to 42 U.S.C. §§ 3613(a) and (c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
(Civil Rights Act of 1866 – 42 U.S.C. §§ 1981 and 1982)

70. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

71. Defendants' conduct as set forth above prevented Plaintiffs Nolan and Roane from enjoying the same right to make and enforce contracts as is enjoyed by white citizens under Section 1981 of the Civil Rights Act of 1866 and the same right to lease real property as is enjoyed by white citizens under Section 1982 of the Civil Rights Act of 1866.

72. Plaintiffs Nolan and Roane have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

73. Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

74. Accordingly, pursuant to 42 U.S.C. §§ 1981, 1982, and 1988, Plaintiffs Nolan and Roane are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
(New York Executive Law § 290 *et seq*.)

75. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

76. Defendants' conduct as set forth above constitutes the refusal to rent and/or the denial of a housing accommodation and/or the withholding of a housing accommodation because of race or color in violation of Article 15 of the New York Executive Law § 296(5)(a)(1).

77. Defendants' conduct as set forth above constitutes a representation that a housing accommodation is not available for rent or lease when in fact it is so available in violation of Article 15 of the New York Executive Law § 296(5)(a)(1).

78. Defendants' conduct as set forth above constitutes discrimination because of race or color in the terms, conditions, or privileges of the rental of a housing accommodation or in the furnishing of facilities or services in connection therewith in violation of the New York Executive Law § 296(5)(a)(2).

79. Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden by New York Executive Law § 296(5), in violation of the New York Executive Law § 296(6).

80. Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

81. Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

82. Accordingly, pursuant to Article 15 of the New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
(New York Civil Rights Law § 40-c)

83. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

84. New York Civil Rights Law § 40-c(2) provides in relevant part that: "No person shall, because of race, creed, or color . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution."

85. By engaging in the discriminatory conduct as set forth above, Defendants violated New York Civil Rights Law § 40-c.

86. Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

87. Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

88. At or before the commencement of this action, Plaintiffs provided notice of this action to the Attorney General of the State of New York per New York Civil Rights Law § 40-d.

89. Accordingly, pursuant to New York Civil Rights Law § 40-c, Plaintiffs are entitled to statutory damages, injunctive relief, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
(New York City Administrative Code § 8-107)

90. Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

91. Defendants' conduct as set forth above constitutes a refusal to rent or lease or other withholding of a housing accommodation because of race or color in violation of New York City Administrative Code § 8-107(5)(a)(1)(a).

92. Defendants' conduct as set forth above constitutes discrimination because of race or color with respect to the terms, conditions, or privileges of the rental or lease of a housing accommodation in violation of New York City Administrative Code § 8-107(5)(a)(1)(b).

93. Defendants' conduct as set forth above constitutes a representation that a housing accommodation is not available for rent or lease when in fact it is so available in violation of New York City Administrative Code § 8-107(5)(a)(1)(c).

94. Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden under New York City Administrative Code § 8-107(5), or attempting to do so, in violation of New York City Administrative Code § 8-107(6).

95. Plaintiffs have served a copy of this Complaint upon the City Commission on Human Rights and the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

96. Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

97. Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

98. Accordingly, pursuant to New York City Administrative Code §§ 8-502(a) and (g), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and such other remedies as may be appropriate, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request the following relief:

a. An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*., the Federal Civil Rights Act, as amended, 42 U.S.C. §§ 1981, 1982, the New York State Human Rights Law, New

York Executive Law § 290 *et seq.*, and the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq.*;

b. An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

(i)  refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii) discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii) coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c. An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation to:

(i)  make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(ii) train all management, agents, and employees on fair housing laws;

(iii) display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(iv) allow monitoring of their rental screening and application process and decisions;

(v) retain records to allow for appropriate monitoring;

  (vi) develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

  (vii) undertake active efforts and steps to ensure that African Americans seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

  (vii) establish a system so that their agents can be tested for unlawful discriminatory practices;

d. An order and judgment awarding monetary damages to compensate Plaintiffs fully for any economic losses, diversion of resources, interference with mission fulfillment, and the humiliation, degradation, embarrassment, and emotional distress suffered due to Defendants' discriminatory conduct;

e. An order and judgment awarding punitive damages;

f. An order and judgment awarding Plaintiffs' reasonable attorneys' fees, costs, interest, and expenses incurred in prosecuting this action; and

g. Any further relief that may be just and proper.

Dated: New York, New York
January 9, 2020

           By:  /s/ Mariann Meier Wang
              Mariann Meier Wang
              Alexander Goldenberg

            CUTI HECKER WANG LLP
            305 Broadway, Suite 607
            New York, New York 10007
            (212) 620-2603
            mwang@chwllp.com
            agoldenberg@chwllp.com

            *Attorneys for Plaintiffs*